IN THE CIRCUIT COURT OF SALINE COUNTY, ARKANSAS

**JOHN DOE (a pseudonym),**
**On behalf of himself and all other**
**Arkansas residents similarly situated**

FILED
SALINE COUNTY CIRCUIT CLERK
08/27/15 12:54:05
BY **EA**

**PLAINTIFF**

vs.          Case No. CV30N-15-600-3

**AVID LIFE MEDIA, INC., an Ontario Corporation,**
**and AVID DATING LIFE, INC., an**
**Ontario Corporation d/b/a ASHLEY MADISON**          **DEFENDANTS**

## CLASS ACTION COMPLAINT

Comes now the Plaintiff, JOHN DOE (a pseudonym), on behalf of himself and all other Arkansas residents similarly situated, against Defendants AVID LIFE MEDIA, INC. and AVID DATING LIFE, INC. dba ASHLEY MADISON ("Defendants" hereinafter) and for his class action complaint states as follows:

### NATURE OF THE ACTION

1.     Plaintiff brings this class action as a result of a breach of the security system of Defendant AVID LIFE MEDIA, INC. ("ALM" hereinafter) governing electronic transactions, resulting in compromised security of Plaintiff's and Class Members' personal financial information. Upon information and belief, such personal information included, but was not limited to, the putative Class Members' ("Class Members" hereinafter) names, addresses, credit or debit credit card number; the card's expiration date, and/or the card's CVV (a three-digit security code) ("Personal Information" hereinafter).

2.     On or about July 15, 2015, and at time prior to July 15, 2015, ALM's databases were compromised, with the result that Personal Information of Plaintiff and Class Members' Personal Information was used or is at risk of use in fraudulent transactions worldwide, as well as other invidious exposure. Upon information and belief, Defendants maintain or maintained information, including Personal Information, regarding nearly 37 million subscribers, and Defendants' security failures affected the credit and debit cards of hundreds of thousands, if not millions, of customers, including Plaintiff and Class Members.

3.     Upon information and belief, the security breach and theft of Personal Information was caused by the Defendants' violation of its obligation to abide by the best practices and industry standards concerning the security of its payment processing systems and the computers associated therewith as set forth, for example, in Payment Card Industry Security Standards Council Data Security Standards ("PCI DSS") and the decisions of the Federal Trade Commission ("FTC") concerning protection of consumer financial information.

4.     After learning of the security breach, Defendants failed to notify Plaintiff and the putative Class Members in a timely manner and failed to take other reasonable steps to inform them of the nature and extent of the breach. As a result, Defendants prevented Plaintiff and the putative Class Members from protecting themselves from the breach and cause Plaintiff and putative Class Members to suffer financial loss.

5.    Plaintiff, on behalf of himself and all other Arkansas residents similarly situated, asserts the following claims: violations of the Stored Communications Act ("SCA" hereinafter), 18 U.S.C. §2702, negligence, breach of implied contract, violation of the Arkansas Deceptive Trade Practices Act ("ADTPA" hereinafter), Ark. Code Ann. §4-88-101, *et seq.*, and violation of the Arkansas Personal Information Protection Act ("APIP" hereinafter), Ark. Code Ann. §4-110-101, *et seq.* ].

## PARTIES

6.    Plaintiff John Doe (a pseudonym) is an adult male domiciled in Benton, Saline County, Arkansas and is a citizen of Arkansas.  Plaintiff and putative Class Members provided Personal Information to Defendants with a heightened expectation of privacy due to the nature of Defendants' products and services.    Additionally, Plaintiff and putative Class Members provided Personal Information to Defendants in order to effectuate a "paid-delete" of any of his personal information in Defendants' possession, including personal information, as promised by Defendant. Upon information and belief, Plaintiff's Personal Information was compromised as a result of Defendants' security failures.    As a result of such compromise, John Doe and putative Class Members suffered losses and damages in an amount yet to be completely determined as such losses and damages are ongoing.

7.    Defendant AVID LIFE MEDIA, INC. is a corporation organized and existing under the laws of Ontario, Canada, with its principal place of business

and headquarters in Toronto, Canada.    The corporation owns various companies that are in the business of operating online dating websites.

8.      Defendant AVID DATING LIFE, INC. d/b/a ASHLEY MADISON is a corporation organized and existing under the laws of Ontario, Canada, with its principal place of business in Toronto, Canada, and is regularly engaged in the business of operating online dating websites, including AshleyMadison.com.

### JURISDICTION AND VENUE

9.      The Court has subject matter jurisdiction of this action because the amount in controversy exceeds the minimum jurisdictional limits of the Court.   Defendants are not citizens for the purposes of federal court diversity analysis.  However, no Individual Plaintiff's or Class Member's claim is equal to or greater than $75,000.00, inclusive of costs and attorneys' fees.  Moreover, the total damages of the Plaintiff and Class Members, inclusive of costs and attorneys' fees, do not exceed $5,000,000.00.

10.     This Court has personal jurisdiction over the Defendants pursuant to Arkansas Code Annotated §16-4-101 as Defendants have more than minimum contacts within the State of Arkansas and have availed themselves of the privilege of conducting business in this state.

11.     Venue is proper in this forum pursuant to Ark. Code Ann. §16-55-213(a) because a substantial part of the events or omissions giving rise to the Plaintiff's and Class Members' claims occurred in this county.

## FACTUAL BACKGROUND

12.   Plaintiff repeats, realleges, and incorporates paragraphs 1-11 in his Complaint as if set forth fully herein.

13.   Defendants is own, operate, and control social networking services, including AshleyMadison.com ("AshleyMadison"), a dating website marketed to people who are married or who are in committed relationships, seeking discrete, confidential, extramarital encounters.

14.   The website's business model is based on credits, which are required to initiate conversations with another user. These credits are used in lieu of a paid subscription. Users buy credits from the website and enter their credit or debit card information in order to pay for the credits.

15.   The website also offered its users a "scrub" or "paid-delete" feature, which purportedly completely deleted any personal information, including Personal Information, in Defendants' possession. In other words, for a price, the Defendants promised to delete any information on a user. By failing to delete the users' personal information upon the users' purchase of the $19.00 paid-delete, Defendants broke their promise to their users, including Plaintiff and putative Class Members.

16.   A user account on AshleyMadison requires a username and password, a personalized "greeting," indicating the country in which the user resides, zip code, date of birth, type of affair sought (short term, long term, cyber affair/erotic chat, or other), height, weight, body type, ethnicity, and email.

17. Directly below the box in which users are asked to enter their "email," the website promises: "*This email will never be shown or shared.*"

18. The website also asks each user to upload a "discrete phot" and offers options of placing a mask over the user's eyes on the photo or blurring the photo.

19. In the "Manage Profile" section, users may enter information relating to "My Intimate Desires" "My Perfect Match" and "My Personal Interests," among other information.

20. Upon information and belief, Defendants stored the users' personal information they collect in an unencrypted format at the database level. Despite these security threats that may have been internally discovered by the Defendants' internal officers and directors, Defendants published on the internet a statement calling itself "the last truly space on the Internet."

21. In approximately 2010, Plaintiff created an account with AshleyMadison. As part of the process of creating his account, Plaintiff created a username and password and entered his Personal Information into the website's system. Plaintiff subsequently purchased credits and communicated with other members on the website.

22. Upon information and belief, Defendants accept customer payments for services through credit and debit cards issued by members of the payment card industry ("PCI" hereinafter) such as VISA or MasterCard.

23.    In 2006, the PCI members established a Security Standards Counsel ("PCI SSC") as a forum to develop PCI Data Security Standards ("PCI DSS") for increased security of payment of processing systems.

24.    The PCI DSS provides, "If you are a merchant that accepts payment cards, you are required to be complaint with the PCI Data Security Standard." Defendants' compliance with PCI DSS is required.

25.    The PCI DSS requires a merchant to:

a.    **Assess**—identify cardholder data, take inventory of IT assets and business process for payment card processing, and analyze them for vulnerabilities that could expose cardholder data;

b.    **Remediate**—fix vulnerabilities and do not store cardholder data unless needed.

c.    **Report**—compile and submit required remediation validation records (if applicable) and submit compliance reports to the acquiring bank and card brands with which a merchant does business.

26.    Additionally, since 1995, the FTC has been studying the manner in which online entities collect and use personal information and safeguards to assure that online data collection practice is fair and provides adequate information privacy protection.    The result of this study is the FTC Fair Information Practice Principles, which sets out the following core principles:

a.    **Notice/Awareness**—Consumers should be given notice of an entity's information practices before any personal information is collected from

them.   This requires that companies explicitly notify of some or all of the following:

i.    Identification of the entity collecting the data;

ii.   Identification of the uses to which the data will be put;

iii.  Identification of any potential recipients of the data;

iv.   The nature of the data collected and the means by which it is collected;

v.    Whether the provision of the requested data is voluntary or required; and

vi.   The steps taken by the data collector to ensure the confidentiality, integrity, and quality of the data.

b.    **Choice/Consent**—Choice and consent in an online information-gathering sense means giving consumers options to control how their data is used with respect to secondary uses of information beyond the immediate needs of the information collector to complete the consumer's transaction.

c.    **Access/Participation**—Access as defined in the Fair Information Practice Principles includes not only a consumer's ability to view the data collected, but also to verify and contest its accuracy. This access must be inexpensive and timely in order to be useful to the customer.

d.    **Integrity/Security**—Information collectors should ensure that the data they collect is accurate and secure. They should improve the data by cross-referencing it with only reputable databased and by providing access for the consumer to verify it. Information collectors should keep their data secure by protecting against both internal and external security threats.

They should limit access within their company to only necessary employees to protect against internal threats, and they should use encryption and other computer-based security systems to stop outside threats.

      e.     **Enforcement/Redress**—In order to ensure that companies follow the Fair Information Practice Principles, there must be enforcement measures. The FTC identifies three types of enforcement measures: self-regulation by the information collectors or an appointed regulatory body; private remedies that give rise to civil causes of action for individuals whose information has been misused to sue violators; and government enforcement, which can include civil and criminal penalties levied by the government.

      27.    Upon information and belief, Defendants failed to adequately analyze its computer systems for vulnerabilities that could expose cardholder data. Defendants further failed to fix these vulnerabilities in its computer systems which allowed Plaintiff's and Class Members' Personal Information to be compromised.

      28.    Additionally, upon information and belief, Defendants unlawfully collected financial data for marketing purposes beyond the needs for specific transactions, in order to accrue financial benefit at the risk and likelihood of compromising consumers' Personal Information.

      29.    As a result of the Defendants' violation of their obligations to abide by the best practices and industry standards concerning the security of its payment processing systems and the computers associated therewith and their failure to maintain adequate and reasonable security measures to secure the

data of the website's users from being compromised, on or about July 20, 2015, Impact Team, a group of hackers, accessed a databased owned, operated and controlled by Defendants that processes, stores, and/or utilizes information regarding Plaintiff's and putative Class Members' transactions including, upon information and belief, cardholder names, credit and debit card account numbers, expiration dates, and/or other information.

30.    Upon information and belief, among the data compromised and downloaded were profiles of individuals who executed the option to scrub their user profiles and all associated data, and paid Defendants $19.00 to do so, yet Defendants failed to actually scrub the data.

31.    Upon information and belief, following the breach and download of users' Personal Information, Impact Team threatened to leak the downloaded Personal Information to the public if Defendants did not shut down AshleyMadison permanently:



Avid Life Media has failed to take down Ashley Madison and Established Men. We have explained the fraud, deceit, and stupidity of ALM and their members. Now everyone gets to see their data.

Find someone you know in here? Keep in mind the site is a scam with thousands of fake female profiles. See ashley madison fake profile lawsuit; 90-95% of actual users are male. Chances are your man signed up on the world's biggest affair site, but never had one. He just tried to. If that distinction matters.

Find yourself in here? It was ALM that failed you and lied to you. Prosecute them and claim damages. Then move on with your life. Learn your lesson and make amends. Embarrassing now, but you'll get over it.

Any data not signed with key 6E50 3F39 BA6A BAAD D81D  ECFF 2437 3CD5 74AD AA30 is fake.

32.    After learning of the security breach, Defendants failed to notify Plaintiff and putative Class Members in a timely manner and failed to take reasonable steps to inform them of the nature and extent of the breach. As a result, Defendants prevented Plaintiff and putative Class Members from protecting themselves from the breach and caused Plaintiff and putative Class Members to suffer financial loss and emotional distress.

33.    Defendants failed to shut down AshleyMadison and, on or about August 18, 2015, Impact Team published 9.7 gigabytes of stolen Personal Information on the Internet.   On or about August 20, 2015, Impact Team published even more of the users' Personal Information on the Internet.

34.    This massive data breach could have been prevented had Defendant taken the necessary and reasonable precautions to protect its users' information by, for example, encrypting the data entrusted to it by its users on a database level so that any information hacked and downloaded appeared in an encrypted format. Defendants were aware or should have been aware of the need to secure users' information, especially in light of the recent rise of massive security breaches on the Internet and the fact that the information contained on its serves is particularly sensitive.

35.    Additionally, Defendants were provided with Personal Information in order to effectuate a "paid-delete" of any of their personal information in Defendants' possession, including Personal Information, as promised by Defendant. In fact, the amount of Personal Information was increased because

Defendants retained Personal Information related to the paid-delete transaction itself.

36.   Plaintiff's account and personal information is among the information that was compromised in the breach and made public on the Internet.

37.   Plaintiff and putative Class Members are subject to continuing damages from having their Personal Information compromised as a result of Defendants' inadequate systems and failures.  Such damages include, among other things, the amount paid to Defendant to perform a "paid-delete", which Defendant did not perform or performed inadequately; out-of-pocket expenses incurred to mitigate the increased risk of identity theft or fraud; credit, debit, and financial monitoring to prevent and/or mitigate theft, identity theft, and/or fraud incurred or likely to occur as a result of Defendants' security failures; the value of their time and resources spent mitigating the identity theft and/or fraud; the cost of and time spent replacing credit card and debit card and reconfiguring automatic payment programs with other merchants related to the compromised cards; and irrecoverable financial losses due to unauthorized charges on the credit/debit cards of Defendants' customers by identity thieves who wrongfully gained access to the Personal Information of Plaintiff and the Class members.  Plaintiff and putative Class Members are in immediate danger of sustaining injuries as a result of Defendants' actions and inactions.

## CLASS ACTION ALLEGATIONS

38.    Plaintiff repeats, realleges, and incorporates paragraphs 1-37 in this Complaint as if fully set forth herein.

39.    Plaintiff brings this action on his own behalf and, pursuant to Rule 23 of the Arkansas Rules of Civil Procedure, on behalf of the following (3) classes:

- **All Arkansas residents who paid Defendants for "paid-delete" services which were not improperly performed.**

- **All Arkansas residents whose Personal Information was subject to Defendants' security failures and who have suffered or anticipate and/or are in immediate danger of suffering damages, loss, and/or expenses accruing due to Defendants' security failures.**

- **All Arkansas residents whose Personal Information was subject to Defendants' security failures and who suffered damages and anticipate and/or are in immediate danger of suffering damages in the amount of fraudulent charges/unauthorized withdraws made to their credit and/or debit cards or suffered damages and anticipate and/or are in immediate danger of suffering damages in the amount of overdraft charges made to their credit and/or debit cards.**

Excluded from Classes are Defendants and its affiliates, parents, subsidiaries, employees, officers, agents, and directors.

40.    The Members of the Classes are so numerous that joinder of all Members is impracticable.  On information and belief, tens of thousands of Arkansans' credit and/or debit cards may have been compromised, and the

Members of the Classes are geographically dispersed throughout the State of Arkansas. Disposition of the claims of the proposed Classes in a class action will provide substantial benefits to both the parties and the Court.

41.    The rights of each Member of the proposed Classes were violated in a similar fashion based upon Defendants' uniform wrongful actions and/or inaction.

42.    The following questions of law and fact are common to each proposed Class Member and predominate over any question that may affect individual Class Members:

a.    Whether Defendants failed to use reasonable care and commercially reasonable methods to secure and safeguard its customers' private financial and personal information;

b.    Whether Defendants properly implemented security measures to protect consumers' private financial and personal information from unauthorized capture, dissemination, and misuse;

c.    Whether Defendants took reasonable measures to determine the extent of the security breach after it first learned of same;

d.    Whether Defendants' delay in informing consumers of the security breach was unreasonable;

e.    Whether Defendants' method of informing consumers of the security breach and its description of the breach and potential exposure to damages as a result of same was unreasonable;

     f.     Whether 'Defendants' conduct violated the Stored Communications Act, 18 U.S.C. §2702;

     g.     Whether Defendants engaged in negligent conduct;

     h.     Whether Defendants breached an implied contract with Class Members;

     i.     Whether Defendants' conduct violated the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §4-88-101, *et. seq.*

     j.     Whether Defendants' conduct violated the Arkansas Personal Information Protection Act, Ark. Code Ann. §4-110-101, *et. seq.*;

     k.     Whether Plaintiff and other Members of the Classes are entitled to compensatory, monetary damages, equitable relief and injunctive relief and, if so, the nature and amount of such relief.

43.     Plaintiff's claims are typical of the claims of absent Class Members. If brought individually, the claims of each Class Member would necessarily require proof of the same material and substantive facts, and seek the same remedies.

44.     The Plaintiff is willing and prepared to serve the Court and the proposed Classes in a representative capacity. The Plaintiff will fairly and adequately protect the interest of the Classes and have no interests adverse to, or which directly and irrevocably conflicts with, the interests of the other Members of the Classes. Further, Plaintiff has retained counsel experienced in prosecuting complex class action litigation.

45.    Defendants have acted or refused to act on grounds generally applicable to the proposed Classes, thereby making appropriate equitable relief with respect to the Classes.

46.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual claims of the Class Members are impractical, as the costs of prosecution may exceed what any Class Member has at stake.

47.    Members of the Classes are readily ascertainable through Defendants' records of the transactions it undertook.

48.    Prosecuting separate actions by individual Class Members would create a risk of inconsistent or varying adjudications that would establish incomparable standards of conduct for Defendants.  Moreover, adjudications with respect to individual Class Members would, as a practical matter, be dispositive of the interests of other Class Members.

## CAUSES OF ACTION

### COUNT I—VIOLATION OF THE FEDERAL STORED COMMUNICATIONS ACT, 18 U.S.C. §2702

49.    Plaintiff repeats, realleges, and incorporates paragraphs 1-48 in this Complaint as if fully set forth herein.

50.    The Stored Communications Act ("SCA" hereinafter) contains provisions that provide consumers with redress if a company mishandles their electronically stored information.  The SCA was designed, in relevant part, "to protect individuals' privacy interest in personal and proprietary information." S. Rep. No. 99-541 at 3 (1986), reprinted in 1986 U.S.C.C.A.N. 3555 at 3557.

51.    Section 2702(a)(1) of the SCA provides that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. §2702(a)(1).

52.    The SCA defines "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." *Id.* at §2710 (15).

53.    Through its payment processing equipment, Defendants provide an "electronic communication service to the public" within the meaning of the SCA because it provides consumers at large with credit and debit card payment processing capability that enables them to send or receive wire or electronic communications concerning their private financial information to transaction managers, card companies or banks.

54.    By failing to take commercially reasonable steps to safeguard sensitive private financial information, even after Defendants were aware that customers' Personal Information had been compromised, Defendants have knowingly divulged customers' private financial information that was communicated to financial institutions solely for customers' payment verification purposes, while in electronic storage in Defendants' payment system.

55.    Section 2702(a)(2)(A) of the SCA provides that "a person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or

maintained on that service on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such service." 18 U.S.C. §2702(a)(2)(A).

56.    The SCA defines "remote computing service" as "the provision to the public of computer storage or processing services by means of an electronic communication system." 18 U.S.C. §2711(2).

57.    An "electronic communications systems" is defined by the SCA as "any wire, radio, electromagnetic, photo-optical, or photo-electronic facilities for the transmission of wire or electrical communications, and any computer facilities or related electronic equipment for the electronic storage of such communications." 18 U.S.C. §2510(4).

58.    Defendants provide remote computing services to the public by virtue of its computer processing services for consumer credit and debit card payments, which are used by customers and carried out by means of an electronic communications system, namely the use of wire, electromagnetic, photo-optical, or photo-electrical facilities for the transmission of wire or electronic communications received from, and on behalf of, consumers concerning consumers' private financial information.

59.    By failing to take commercially reasonable steps to safeguard sensitive private financial information, Defendants have knowingly divulged customers' private financial information that was carried and maintained on

Defendants' remote computing service solely for the customers' payment verification purposes.

60.     As a result of Defendants' conduct described herein and its violation of Sections 2702(a)(1) and (2)(A), Plaintiff and putative Class Members have suffered injuries, including lost money and the costs associated with the need for vigilant credit monitoring to protect against additional identity theft. Plaintiff, on his own behalf, and on behalf of the putative Classes, seeks an order himself and the Classes the maximum statutory damages available under 18 U.S.C. §2707.

WHEREFORE, Plaintiff and putative Class Members pray for Judgment in their favor and against Defendants on this Count I of their Complaint, for actual and compensatory damages, for punitive or exemplary damages; for statutory interests and penalties; for injunctive relief; for costs, expenses and attorneys' fees as allowed by the law, and any and all other relief to which the Court deems just and proper.

## COUNT II—NEGLIGENCE

61.     Plaintiff repeats, realleges, and incorporates paragraphs 1-60 in this Complaint as if fully set forth herein.

62.     Upon coming into possession of Plaintiff's and putative Class Members' Personal Information, i.e., private, non-public, sensitive financial information, Defendants had (and continued to have) a duty to exercise reasonable care in safeguarding and protecting the information from being compromised and/or stolen.

63. Defendants also had a duty to timely disclose to Plaintiff and putative Class Members that a breach of security had occurred and their Personal Information pertaining to their credit cards and/or debit cards had been compromised, or was reasonably believed to be compromised.

64. Defendants also had a duty to put into place internal policies and procedures designed to detect and prevent the theft or dissemination of Plaintiff's and putative Class Members' Personal Information.

65. Defendants, by and through its above negligent acts and/or omissions, breached their duty to Plaintiff and putative Class Members by failing to exercise reasonable care in protecting and safeguarding their Personal Information which was in Defendants' possession, custody, and control.

66. Defendants, by and through its above negligent acts and/or omissions, further breached its duty to Plaintiff and putative Class Members by failing to put into place internal policies and procedures designed to detect and prevent the unauthorized dissemination of Plaintiff's and putative Class Members' Personal Information.

67. If not for Defendants' negligent and wrongful breach of its duties owed to Plaintiff and putative Class Members, their Personal Information would not have been compromised.

68. Plaintiff's and putative Class Members' Personal Information was compromised and/or stolen as a direct and proximate result of Defendants' breach of its duties as set forth herein.

69.     Plaintiff and putative Class Members have suffered actual damages including, but not limited to, having their personal information compromised, incurring time and expenses in cancelling their debit and/or credit card, activating new cards, re-establishing automatic payment authorizations from their new cards, and other economic and non-economic damages, including irrecoverable losses due to unauthorized charges on their credit/debit cards.

WHEREFORE, Plaintiff and putative Class Members pray for Judgment in their favor and against Defendants on this Count II of their Complaint, for actual and compensatory damages, for punitive or exemplary damages; for statutory interests and penalties; for injunctive relief; for costs, expenses and attorneys' fees as allowed by the law, and any and all other relief to which the Court deems just and proper.

## COUNT III—BREACH OF IMPLIED CONTRACT

70.     Plaintiff repeats, realleges, and incorporates paragraphs 1-69 in this Complaint as if fully set forth herein.

71.     Plaintiff and putative Class Members were required to provide Defendants' with their Personal Information in order to facilitate their credit card and/or debit card transactions.

72.     Implicit in this requirement was a covenant requiring Defendants to take reasonable efforts to safeguard this information and promptly notify Plaintiff and putative Class Members in the event their information was compromised.

73.     Similarly, it was implicit that Defendants would not disclosed Plaintiff's and putative Class Members' Personal Information.

74.     Notwithstanding its obligations, Defendants knowingly failed to safeguard and protect Plaintiff's and putative Class Members' Personal Information.   To the contrary, Defendants allowed this information to be disseminated to unauthorized third parties.

75.     Defendants' above wrongful actions and/or inaction breached its implied contracts with Plaintiff and putative Class Members which, in turn, directly and/or proximately cause Plaintiff and putative Class Members to suffer substantial injuries.

WHEREFORE, Plaintiff and putative Class Members pray for Judgment in their favor and against Defendants on this Count III of their Complaint, for actual and compensatory damages, for punitive or exemplary damages; for statutory interests and penalties; for injunctive relief; for costs, expenses and attorneys' fees as allowed by the law, and any and all other relief to which the Court deems just and proper.

**COUNT IV—VIOLATION OF THE
ARKANSAS DECEPTIVE TRADE PRACTICES ACT,
ARK. CODE ANN. §4-88-101, <em>et seq.</em>**

76.     Plaintiff repeats, realleges, and incorporates paragraphs 1-75 in this Complaint as if fully set forth herein.

77.     Defendants violated the Arkansas Deceptive Trade Practices Act ("ADTPA" hereinafter), Ark. Code Ann. §4-88-101, <em>et seq.</em> by failing to properly implement adequate, commercially reasonable security measures to protect

consumers' private financial information, and by failing to immediately notify affected customers of the nature and extent of the security breach.

78.    Upon information and belief, the Defendants further violated the ADTPA by failing to verify and confirm the legitimacy of the email addresses of its users and by creating fake female profiles in an effort to falsely advertise the Defendants' services, increase membership, and increase revenues.

79.    Defendants'    fraudulent    and    deceptive    omissions    and misrepresentations regarding the company's security measures to protect customers' private financial information and the extent of the breach of those security measures were intended to deceive and induce Plaintiff's and putative Class Members' reliance on Defendants' misrepresentations that their financial information was secure and protected when using debit and/or credit cards on Defendants' website.

80.    Defendants' unlawful misrepresentations and omissions occurred in the course of conduct involving trade or commerce.

81.    Defendants' unlawful misrepresentations and omissions were material because Plaintiff and other putative Class Members, if they had known the truth, would not have risked compromising their private financial information by using their debit and/or credit cards on Defendants' website. Plaintiff and other putative Class members would consider the omitted and misrepresented material facts important in making their purchasing decisions.

82.    Defendants' unlawful misrepresentations and omissions damaged Plaintiff and putative Class Members because Plaintiff and putative Class

Members would not have chosen to expose their private financial information to a security breach and subsequent exploitation by Defendants.

83.    Plaintiff, therefore, prospectively asserts that, by its above-described wrongful actions, inactions and/or omissions, and the resulting data breach of Personal Information, Defendants knowingly violates the ADPTA by engaging   in   the   above-described   unconscionable   actions   and/or unconscionable course of action despite knowing of the security issues present in Defendants' systems; to wit, despite knowing of the security issues present in Defendants' systems, failing to identify, implement, maintain, and monitor the proper data security measures, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiff's and Class Members' Personal Information data, which, as a direct and/or proximate result, was stolen and compromised in the Data Branch.

84.    Defendants' above-described wrongful actions, inaction, and/or omissions and the resulting data breach unfairly took advantage of the lack of knowledge, experience of Plaintiff and putative Class Members to a grossly unfair degree regarding Defendants' computer system and servers and Defendant's computer system and servers and Defendants' inability to safeguard and protect their Personal Information data; to wit, at the time Plaintiff and putative Class Action Members gave Defendants their Personal Information data in connection with purchasing access or service at AshleyMadison.com, Plaintiff and putative Class Members did not know, and

had no way of knowing, that Defendants were incapable of safeguarding and protecting their Personal Information data.

85. Defendants' actions were willful, wanton, malicious, and in total disregard for the rights of the Plaintiff and putative Class Members. Defendants knew or should have known, in light of the surrounding circumstances that their conduct in violation of the ADTPA would naturally and probably result in damages to Plaintiff and putative Class Members. Defendants continued their conduct with malice or in reckless disregard of the consequences, from which malice may be inferred. Further, Defendants intentionally pursued a course of conduct for the purpose of causing Plaintiff and putative Class Member damages. Punitive damages should be awarded to deter the actions of Defendants and others who might engage in similar action or conduct.

86. Plaintiff, on behalf of himself and the putative Class Members, are entitled to any and all penalties and/or multipliers of damages provided in the ADTPA, and seeks an Order requiring Defendants to pay for actual, compensatory damages, and punitive damages for the conduct described herein; costs, expenses and attorneys' fees as allowed by the law, and any and all other relief to which the Court deems just and proper.

WHEREFORE, Plaintiff and putative Class Members pray for Judgment in their favor and against Defendants on this Count IV of their Complaint, for actual and compensatory damages, for punitive or exemplary damages; for statutory interests and penalties; for costs, expenses and attorneys' fees as

allowed by the law, and any and all other relief to which the Court deems just and proper.

### COUNT V— VIOLATION OF THE
#### Arkansas Personal Information Protection Act,
#### Ark. Code Ann. §4-110-101, *et seq.*

87.    Plaintiff repeats, realleges, and incorporates paragraphs 1-86 in this Complaint as if fully set forth herein.

88.    As pled in Count IV infra, Plaintiff and putative Class Members are protected under the ADTPA and Defendants are subject to the DTPA and subject to the provisions of the Arkansas Personal Information Protection Act ("APIP" hereinafter), Ark. Code Ann. §4-110-101, *et seq.* because it is a statute that ties-in with the ADTPA pursuant to Ark. Code Ann. §4-88-101, *et seq.*

89.    Defendants stored Plaintiff's and putative Class Member's Personal Information including, but not limited to, sensitive information and personal identifying information such as their names, dates of birth, bank account numbers, credit and/or debit card numbers, physical and/or mental conditions, sexual preferences and fantasies, physical address, and other information.

90.    Plaintiff and putative Class Members are "victims" under this act because their Personal Information is available on the internet and being perused by unauthorized individuals.  Upon information and belief, Plaintiff's and putative Class Members' information is also being used for profit and for blackmail purposes.

91.    Defendants violated their duty to protect sensitive personal information by failing to implement and maintain reasonable procedures around the Personal Information, including taking protective actions when they knew the personal information was vulnerable, and to protect the data from unlawful use.

92.    Defendants also failed to destroy or arrange for the destruction of the personal information in a safe and secure manner in violation of this Act. Further, Plaintiff and putative Class Members who affirmatively paid Defendant to remove their personal data and received a guarantee that it was removed were harmed. Defendants actually failed to safely and securely destroy that data and permitted it to be stolen by unauthorized users.

93.    Defendants further violated this Act by failing to notify Plaintiff and putative Class Members immediately upon learning of the beach. Notice, if any, was given to Plaintiff and putative Class Members too late and not in accordance with this Act.

94.    As a natural and proximate result of Defendants' violation of this Act, Plaintiff and putative Class Members were harmed and will continue to be harmed.

WHEREFORE, Plaintiff and putative Class Members pray for Judgment in their favor and against Defendants on this Count V of their Complaint, for actual and compensatory damages, for punitive or exemplary damages; for statutory interests and penalties; for injunctive relief; for costs, expenses and

attorneys' fees as allowed by the law, and any and all other relief to which the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff and putative Class Members demand a jury trial as to all claims and issues trial of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Members of the proposed Classes pray that this Honorable Court:

A.  Certify this matter as a class action pursuant to Rule 23 of the Arkansas Rules of Civil Procedure and order that notice be provided to all Class Members.

B.  Designate Plaintiff as representative of the Classes and the undersigned counsel as Class Counsel;

C.  Award Plaintiff and the Classes compensatory and punitive damages in an amount to be determined by the trier of fact;

D.  Award Plaintiff and the Classes statutory interest and penalties;

E.  Award Plaintiff and the Classes appropriate injunctive and/or declaratory relief;

F.  Award Plaintiff and the Classes their costs, prejudgment interest, and attorneys' fees; and

G.  Grant such other relief as is just and proper.

*****Signatures of following page *****

Respectfully submitted,

_____

Stephanie Ann Linam
AR Bar No. 2007-132
stephaniel@dlf-ar.com

Charles Darwin "Skip" Davidson
AR Bar No. 73026
skipd@dlf-ar.com

David Gershner
AR Bar No. 2011-168
dgershner@dlf-ar.com

*DAVIDSON LAW FIRM*
724 Garland, Cantrell at State
P.O. Box 1300
Little Rock, AR 72201
(501) 374-9977
Fax: (501) 374-5917

Christopher Jennings
AR Bar No. 2006-306
*JOHNSON VINES PLLC*
2226 Cottondale Lane, Suite 210
Little Rock, AR 72212
(501) 372-1300
Fax: (888) 909-0505

*Attorneys for the Plaintiff and the Putative
Classes*